```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
OORAH, INC.,
                          Plaintiff,                                    MEMORANDUM
                                                                        AND ORDER
         - against -
                                                                        09-CV-0353 (RJD) (JO)
MARVIN SCHICK, et al.,
                          Defendants.
----------------------------------------------------------X
```

**JAMES ORENSTEIN, Magistrate Judge:**

In a letter dated July 9, 2009, Docket Entry ("DE") 52 (the "Motion"), plaintiff Oorah, Inc. ("Oorah") seeks clarification of discovery rulings I made at a conference on June 3, 2009. *See* DE 42. Oorah also seeks to correct what it contends was a mistaken impression on my part about the candor with which it characterized the nature of a subpoena at issue in a later dispute. Motion at 2-3; *see* DE 50 (minute entry for conference dated July 7, 2009). I assume the reader's familiarity with both of the underlying discovery disputes and with my rulings thereon.

Oorah's position as to the first issue rests on a fundamental misreading of the transcript of the conference of June 3, 2009. The question whether Oorah should have to provide the specific subset of information concerning its affiliates that is responsive to the defendants' requests for non-financial documents was simply not raised, either in the conference itself or in the letters submitted in connection with the dispute then under review. My statement at the conference that "as to the affiliates it's not fair game[,]" Motion Ex. A ("Tr.") at 8, was plainly made in the context of the portion of the parties' discovery dispute concerning "financial data." *Id*. at 6. I believe that the transcript cannot fairly be read to preclude discovery of other information concerning the affiliates, particularly by any attorney who was actually present for the colloquy so transcribed.

I do not mean to suggest that discovery of such non-financial information concerning the affiliates necessarily is or is not appropriate, only that the parties have not previously litigated the issue. The time for such litigation having passed (lest the parties be permitted to engage in piecemeal litigation), there is no basis for Oorah to continue to withhold responsive information and I direct it to produce all such information forthwith and in no event later than July 13, 2009.

The second issue that Oorah raises in its letter explicitly seeks no relief, Motion at 3, and therefore does not require a ruling. However, to the extent that Oorah seeks to reassure me about its candor in litigating the discovery disputes to date, I note the following. First, Oorah contends that the presence in the disputed subpoena of a reference to information that would "identify [a] person who entered [a] text string into the [Google] search engine" was not inconsistent with his assertion that "Oorah sought no personal information" by means of the subpoena. Motion at 2-3. He rests that argument on the facts, of which I was aware before the conference on July 7, 2009, that the quoted part of the subpoena occurred in the definition of the term "query" and that the subpoena's substantive request for production did not use that term. As Oorah points out after quoting the request for production, "[t]here is no reference here, and no request for production that in any way relates, to a 'Query[.]'" Motion at 3.

The argument is unpersuasive. The subpoena at issue sought "all documents ... concerning" a specific web site during the relevant period "including all comments and any website traffic information associated with the [site's] URL." DE 46 Ex. A (copy of subpoena), Schedule A at 7. In light of the subpoena's virtually unlimited definition of the terms "concerning" and "document," *see id*. at 5-6, the reference to personal identification data in the definition of "query" was superfluous – such identifying information would inevitably fall within

the broad scope of Oorah's document demand.  Moreover, the argument that Oorah premises on the fact that the document demand did not use the term "query" merely raises the question of why the term was defined at all – and defined in such a way as to highlight personal identifying information – if it was not to be used in the operative portion of the subpoena and if Oorah had no interest in discovering the identities of the web site's readers.

At a more basic level, if the purpose of the second half of Oorah's Motion was to assuage my concerns about its good faith in litigating discovery disputes, it has not succeeded.  To the contrary, the Motion serves only to deepen such concerns.  Specifically, in seeking clarification of my earlier order, Oorah's counsel argues that he has discerned an extraordinarily broad reference to all affiliate-related discovery in my use of the word "it's" in the course of discussing a dispute that was explicitly related only to one request for financial data.  Motion at 2 (citing Tr. at 8).  Given the clarity of the transcript and its context, I am unable to comprehend the attempt to load so much counter-intuitive significance onto that one word as anything other than an obvious distortion of the record.   Nevertheless, I do not have the slightest doubt that Oorah and its counsel are genuinely –  and rightly – anxious to demonstrate their good faith in litigating this case.  They will have ample opportunity to do so as the case proceeds, and I will approach any future dispute in this litigation with the assumption that they will take advantage of each such opportunity as it arises.

**SO ORDERED.**

Dated: Brooklyn, New York
        July 10, 2009

                                          /s/ James Orenstein
                                          JAMES ORENSTEIN
                                          U.S. Magistrate Judge